UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Jeffrey S. Pepin

   v.                                    Civil No. 11-cv-515-PB

Richard Gerry, Warden,
New Hampshire State Prison


**O R D E R**

Before the court is Jeffrey S. Pepin's petition for a writ of habeas corpus, and attachments thereto (doc. no. 1), filed pursuant to 28 U.S.C. § 2254.[1]  The matter is before the court for preliminary review to determine whether the petition is facially valid and may proceed.  See Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules") (requiring court to dismiss habeas petition where petition facially demonstrates that there is no entitlement to relief); United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2) (requiring magistrate judge to preliminarily review prisoner actions to determine whether plaintiff or petitioner has stated any claim upon which relief might be granted).

---

[1] Pursuant to Fed. R. Civ. P. 10(c), the attachments will be considered to be part of the petition for all purposes.

**Standard of Review**

Under LR 4.3(d)(2) and § 2254 Rule 4, when an incarcerated petitioner commences a habeas action pro se, the magistrate judge conducts a preliminary review.  The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court finds that the petition fails to state any claim upon which relief might be granted, or may grant petitioner leave to amend the petition in a specified manner.  See LR 4.3(d)(2); § 2254 Rule 4.

In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).  The court applies a standard analogous to that used in reviewing a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6).  The court decides whether the pleadings contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The court first screens the pleadings for statements that "merely offer legal conclusions couched as fact."  Id. (citations, internal quotation marks and alterations omitted).  "Non-conclusory factual allegations in the complaint must [] be treated as true, even if seemingly incredible."  Id. The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible.  See id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted). In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13.

**Background**

Pepin was charged with two counts of attempted murder, first degree assault, second degree assault, and criminal restraint in connection with an October 15, 2004, altercation between Pepin and his then wife, Mary Pepin ("Mary"). Pepin was acquitted of the attempted murder charges, and convicted of the remaining charges after a jury trial. The New Hampshire Supreme Court ("NHSC") opinion affirming Pepin's conviction on direct appeal, State v. Pepin, 156 N.H. 269, 940 A.2d 221 (2007), sets forth a detailed description of the incident. The facts relevant to consideration of the petition on preliminary review by this court, as described by the NHSC, see id., are summarized below.

On October 15, 2004, after an argument with Pepin at the couple's home, Mary decided to spend the night elsewhere. Mary

started to go up the stairs in the couple's home to get ready to leave.  Pepin met Mary on the stairs and refused to let her pass by holding onto her while blocking her way on the stairs.  Mary tried to go down the stairs to call for help.  Pepin grabbed her by the arms and dragged her upstairs to a landing on the stairway.  Pepin then said "I don't know why I even still bother with you, say good-bye," and choked Mary until she lost consciousness.  Once Mary regained consciousness, she tried to go downstairs.  Pepin again blocked her way and held her arms, so Mary tried to go upstairs.  Pepin held Mary's arms behind her to prevent her from going upstairs.  Pepin then began to push her forward up the rest of the stairs.  Pepin again made a statement indicating that he intended to kill her.  At the top of the stairs, Pepin grabbed Mary by the arm and back of the head and slammed Mary's face into the wooden floor four or five times.  Pepin then choked Mary again until she lost consciousness.

When Mary regained consciousness the second time, Pepin was crying and telling Mary that he loved her.  Mary feigned unconsciousness for ten minutes until she had to vomit.  Mary then went into the bathroom, vomited blood, and lay on the bathroom floor because she felt weak.  Eventually, Mary, still

weak, made her way to the bed. Pepin fell asleep with his arm around Mary. Once Mary was sure that Pepin was asleep, at about 4:00 a.m., she got out of bed, left the house, and called the police from the car. Pepin was arrested in his home that night.

During this incident, Mary suffered a fractured nose, lip laceration, a broken tooth, and bruising and swelling in her neck and face. At trial, Mary reported that as a result of the assault, she couldn't eat solid food for a week, needed a root canal to repair her broken tooth, and had to wear braces. At the time of trial she continued to experience tenderness, tingling, and numbness in her lip and had a scar underneath her lip.

## Procedural History

### I. Trial and Sentencing

Pepin was convicted of first degree assault, second degree assault, and criminal restraint on October 7, 2005, after a jury trial. Pepin was sentenced on December 20, 2005, to serve 7 ½ - 15 years in prison on the first degree assault charge. Pepin received 3 ½ - 7 year sentences on each of the other two charges, suspended, imposed consecutive to the committed term.

II. <u>Direct Appeal</u>

Pepin filed a direct appeal in the NHSC challenging a number of evidentiary rulings and the sufficiency of the evidence at trial. On October 16, 2007, the NHSC affirmed Pepin's convictions on state law grounds.

III. <u>Motion for New Trial - RCSC</u>

On May 22, 2008, Pepin filed a motion for a new trial in the Rockingham County Superior Court ("RCSC") alleging that his trial counsel was ineffective. On June 26, 2008, the RCSC denied Pepin's motion for a new trial. The RCSC, in its ruling, declined to review certain of Pepin's claims, finding that they were procedurally barred, as Pepin had not raised them on direct appeal. The RCSC also ruled that certain arguments raised by Pepin lacked merit.

Pepin appealed the RCSC's ruling to the NHSC, raising three issues in his notice of appeal. The NHSC declined to accept two of the issues, (the content of which is not set forth in the instant petition), thus affirming the RCSC's decision on those two issues. The NHSC accepted the third question raised in the notice of appeal which concerned whether the trial court hearing the motion for a new trial erred in concluding that Pepin's ineffective assistance of trial counsel claims relating to his

federal and state due process and double jeopardy rights, were procedurally barred because they were not raised in Pepin's direct appeal. Pepin subsequently filed a motion to add an issue to his appeal, challenging the trial court's finding that Pepin's double jeopardy and due process claims were procedurally defaulted. The motion was granted.

On October 20, 2009, the NHSC reversed the trial court's ruling and remanded the matter to the RCSC for consideration of the ineffective assistance of counsel, double jeopardy and due process claims. See State v. Pepin, 159 N.H. 310, 313, 982 A.2d 364, 366 (2009). On October 29, 2009, the RCSC denied Pepin relief on the remanded claims. Pepin subsequently filed two motions to reconsider in the RCSC. The motions to reconsider were denied on December 30, 2009, and March 23, 2010. Pepin asserts that he appealed the denial to the NHSC, but the record does not reveal the outcome of that appeal.

IV.  Petition for Writ of Habeas Corpus in RCSC ("Habeas I")

On August 1, 2008, the RCSC denied a habeas petition that Pepin had filed in that court, stating "the record clearly indicates Petitioner would be unable to demonstrate the elements necessary to establish a claimed denial of rights under either the United States or New Hampshire Constitution." Pepin

appealed the denial to the NHSC, which affirmed the RCSC's decision on December 2, 2010.

V.    <u>Petition for Writ of Habeas Corpus – MCSC ("Habeas II")</u>

Pepin filed a second state petition for a writ of habeas corpus, in the Merrimack County Superior Court ("MCSC"). On October 15, 2009, the MCSC issued an order declining to address the merits of the petition as the issues presented were the same as the issues then pending before the NHSC in another matter being litigated by Pepin. The MCSC directed Pepin to show cause why the action should not be stayed pending the outcome of the pending appeal. The outcome of this habeas action is not apparent in the record presently before the court.

VI.    <u>Petition for Writ of Habeas Corpus – MCSC ("Habeas III")</u>

On March 25, 2011, Pepin filed another petition for a writ of habeas corpus in the MCSC. The MCSC denied the petition on May 31, 2011. The MCSC found that a number of Pepin's claims had been decided on the merits by other courts, and would not therefore be readdressed. The MCSC also considered and denied the other claims on the merits.

On June 16, 2011, Pepin filed a motion to reconsider, raising a new set of claims for relief. The court declined to consider or grant Pepin relief on the new claims, as they were raised for the first time in the motion to reconsider. Pepin appealed to the NHSC. The NHSC declined the appeal on October 14, 2011.

VII. Federal Habeas Petition

After the NHSC declined Pepin's notice of appeal on October 14, 2011, Pepin filed the instant petition, raising the following grounds for relief[2]:

> 1. Pepin received ineffective assistance of counsel, in violation of his Sixth and Fourteenth Amendment rights, when his trial attorney failed to: (a) request a limiting instruction at trial; (b) object to the court's imposition of multiple convictions and sentences for lesser included offenses; (c) argue that Pepin's convictions are duplicative and should be merged into a single conviction under the rule of lenity; (d) argue that multiple convictions and sentences violated Pepin's double jeopardy rights and due process; (e) object to evidence improperly admitted at trial under N.H.R. Ev. 410 and 609; and (f) protect Pepin from violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments.
>
> 2. Pepin received ineffective assistance of counsel, in violation of his Sixth and Fourteenth Amendment rights,

---

[2]The claims, as identified here, will be considered to be the claims raised in the instant petition for all purposes. If Pepin disagrees with the claims as identified, he must do so by moving to amend his petition.

when his appellate attorney briefed issues known to be unpreserved regarding: (a) excited utterance; (b) doctor-patient privilege; (c) the admission of evidence under N.H.R. Ev. 401, 403, 404(b), 410, 502, 503, 609, 609(a), and 803[3]; and (d) a Fourth Amendment violation.

3. Pepin received ineffective assistance of counsel, in violation of his Sixth and Fourteenth Amendment rights, when his appellate attorney failed to raise meritorious issues on appeal concerning: (a) multiple convictions for lesser-included offenses, in violation of Pepin's double jeopardy rights; (b) merger convictions on duplicative indictments under the rule of lenity; (c) due process violations; and (d) double jeopardy violations.

4. The trial court violated Pepin's double jeopardy and due process rights under the Fifth and Fourteenth Amendments when it: (a) imposed illegal convictions and sentences on lesser-included offenses; and (b) failed to merge duplicative charges.

5. Pepin's conviction and sentence violate his federal due process rights because he is actually innocent of the offenses of which he has been convicted.

**Discussion**

I. <u>Custody</u>

To be eligible for habeas relief on his federal claims, Pepin must show that he is in custody in violation of his federal constitutional or statutory rights. <u>See</u> 28 U.S.C. § 2254(a). Pepin's incarceration pursuant to the sentence

---

[3] Pepin's petition also refers to rules 135 and 330. It is not clear what rules Pepin is referring to, as there are no rules of evidence so numbered. Because the reference to 135 and 330 occurs nowhere else in the petition, the court will disregard it.

11

imposed on the challenged conviction satisfies the custody requirement in § 2254(a).

II. Exhaustion

In addition to demonstrating that he is in custody, to be eligible for relief in a § 2254 petition, petitioner must show that he has exhausted the remedies available to him in the state courts on his federal habeas claims, or that state corrective processes are unavailable or ineffective to protect his rights. See 28 U.S.C. § 2254(b)(1). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." Id. § 2254(c). Unexhausted claims cannot generally be cited as grounds for granting federal habeas relief. See id. § 2254(b). "[A] petitioner's failure to present his federal constitutional claim to the state courts is ordinarily fatal to the prosecution of a federal habeas case." Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir.), cert. denied, ___ U.S. ___, 132 S. Ct. 426 (2011).

A petitioner's remedies in New Hampshire are exhausted when the NHSC has had an opportunity to rule on the claims. See Lanigan v. Maloney, 853 F.2d 40, 42 (1st Cir. 1988). "In order

to exhaust a claim, the petitioner must present the federal claim fairly and recognizably to the state courts, meaning that he must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) (internal quotation marks and citation omitted).  "'The appropriate focus [in an exhaustion inquiry] centers on the likelihood that the presentation in state court alerted that tribunal to the claim's federal quality and approximate contours.'" Coningford, 640 F.3d at 482 (emphasis in original) (quoting Nadworny v. Fair, 872 F.2d 1093, 1098 (1st Cir. 1989)).

   Pepin has in this petition demonstrated that all of the claims raised in his petition before this court were addressed to the state superior courts in one or more post-conviction actions.  Pepin has also asserted that he sought appellate review of those matters in the NHSC when he was denied relief.  Pepin has not, however, attached to his complaint any notice of appeal, appendix, brief, or other NHSC filing demonstrating that the federal habeas claims raised here were specifically presented to that court, as required to exhaust Pepin's state court remedies.  Accordingly, Pepin will be granted leave to

amend his petition to demonstrate that he has exhausted each of his federal claims.

## Conclusion

Pepin is directed that, within thirty days of the date of this order:

>    1.   If Pepin has previously raised all of the federal claims asserted in his petition in the NHSC, he must amend his petition to show that he has exhausted his state court remedies for his federal claims.  To do so, Pepin should file as exhibits to his petition in this court any motions, notices of appeal, briefs, state court decisions, or other documents, which demonstrate that his state court remedies have been presented to the NHSC; or

>    2.   If Pepin has not yet exhausted all of his state court remedies on his federal claims, and seeks to do so, he must file a motion to stay this action so that he may return to the state courts to exhaust any federal claim that is presently unexhausted.

Should Pepin fail to amend his petition as directed, or otherwise fail to comply with this order, the court will recommend that the petition be dismissed without prejudice for

failure to demonstrate exhaustion of state remedies as to each of the claims asserted therein.  See 28 U.S.C. § 2254(b).

    SO ORDERED.

                                              _____
                                              Landya McCafferty
                                              United States Magistrate Judge

March 6, 2012

cc: Jeffrey S. Pepin, pro se

LBM:jba